IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:24-CV-149-KS

GARY LINDSEY, )
)
Plaintiff, )
)
v. )
) **ORDER**
FRANK BISIGNANO,[1] Commissioner )
of Social Security Administration, )
)
Defendant. )

This matter is before the court for judicial review pursuant to 42 U.S.C. § 405(g) of a final administrative decision of the Social Security Administration, the parties having consented to proceed pursuant to 28 U.S.C. § 636(c). Gary Lindsey ("Plaintiff") filed this action seeking judicial review of the denial of his application for a period of disability and disability insurance benefits ("DIB"). The parties have fully briefed the matter pursuant to the Supplemental Rules for Social Security Actions, and the matter is ripe for adjudication. Having carefully reviewed the administrative record and the briefs submitted by the parties, the court affirms the Commissioner's decision.

---

[1] Frank Bisignano is now Commissioner of Social Security and therefore is substituted as the defendant to this action. *See* Fed. R. Civ. P. 25(d).

## STATEMENT OF THE CASE

Plaintiff applied for DIB on October 27, 2021, with an alleged onset date of November 1, 2019. (R. 11, 238–50.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (R. 11, 83–84, 106–07.) On February 8, 2024, a telephonic hearing was held before Administrative Law Judge ("ALJ") David R. Murchison, who issued an unfavorable decision on March 7, 2024. (R. 11–24, 66–77.) On August 29, 2024, the Appeals Council denied Plaintiff's request for review. (R. 1–7.) At that time, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. On October 17, 2024, Plaintiff initiated this action, seeking judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations

2

omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II.     Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4); *Albright v. Comm'r of SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.* In making this determination, the ALJ must decide "whether the claimant is able to perform

3

other work considering both [the claimant's residual functional capacity] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981). "If the Commissioner meets [this] burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015).

### III.   ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act ("the Act"). As a preliminary matter, the ALJ found that Plaintiff last met the insured status requirements of the Act on December 31, 2023. (R. 13.) At step one, the ALJ found Plaintiff did not engage in substantial gainful activity from November 1, 2019, the alleged onset date, through the date last insured. (*Id.*) Next, the ALJ determined Plaintiff has severe impairments of type II diabetes mellitus; coronary artery disease post myocardial infarctions and multi-stent placement; hypertension; lumbar spine multilevel spondylitic changes; and chronic kidney disease. (*Id.*)

At step three, the ALJ concluded Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (R. 14.) The ALJ expressly considered Listings 1.15, 1.16, and 4.04. (*Id.*)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had, through the date last insured,

4

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally lift and carry 20 pounds and can frequently lift and carry 10 pounds. He can sit for six hours and stand/walk for six hours per eight-hour day. He can frequently reach, handle, finger, and feel. He can frequently climb stairs, balance, kneel, crouch, and crawl. He can occasionally stop and can tolerate occasional exposure to dangerous heights and machinery.

(R. 14.) In making this assessment, the ALJ stated that he considered Plaintiff's symptoms and the evidence (both "objective medical" and "other"), based on the requirements of 20 C.F.R. § 404.1529 and SSR 16–3p, 2017 WL 5180304 (Oct. 25, 2017), and found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms "not entirely consistent with the medical evidence and other evidence in the record." (R. 14–15.)

At step four, the ALJ concluded that Plaintiff could perform past relevant work as an apartment house manager. (R. 17.) The ALJ concluded Plaintiff was not under a disability from November 1, 2019, the alleged onset date, through December 31, 2023, the date last insured. (R. 18.)

## IV.    Plaintiff's Argument

Plaintiff argues that the RFC assessment is not supported by substantial evidence because the ALJ failed to properly develop the record and "relied on his own lay interpretation of raw medical data." (Pl.'s Br. [DE #12] at 5–9.) More specifically, Plaintiff contends the ALJ's RFC assessment "lacked any support from medical opinion evidence and was thus entirely informed by the ALJ's lay interpretation of Plaintiff's record and the raw medical data contained therein," namely data from a

spinal MRI that Plaintiff underwent in August 2022.[2] (*Id.* at 5–7; *see also* Pl.'s Reply [DE #15] at 2 (citing *Arakas v. Comm'r of SSA*, 983 F.3d 83, 108–09 (4th Cir. 2020), for the proposition that ALJs "may not draw their own conclusions from medical imaging"); R. 541 (Aug. 10, 2022, note from Dr. Kristin Wehrung, summarizing and analyzing MRI).) Plaintiff argues that a medical opinion "may have" resulted in a different RFC assessment. (Pl.'s Br. at 9.)

The RFC is an assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. SSR 96–8p, 1996 WL 374184, at *1; *see also* 20 C.F.R. § 404.1545(a). It is an administrative determination "made by the Commissioner based on all the relevant evidence in the case record." *Felton-Miller v. Astrue*, 459 F. App'x 226, 230–31 (4th Cir. 2011); *see also* 20 C.F.R. § 404.1520b(c)(3) (identifying categories of statements on issues reserved to the Commissioner). "[T]he law does not require the RFC to mirror a medical opinion; rather, the ALJ must consider the record as a whole, including 'medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Vanderpool v. Berryhill*, No. 5:18-CV-44-RJ, 2019 WL 118414, at *4 (E.D.N.C. Jan. 7, 2019) (quoting *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005)); *see also* SSR 96–8p, 1996 WL 374184, at *5 (RFC assessment must be based on all

---

[2] Plaintiff also identifies as raw data medical files with lab results showing Plaintiff's elevated blood glucose levels. (Pl.'s Br. at 7; Pl.'s Reply at 2–3.) But Plaintiff does not explain how the ALJ erred by relying on this "raw data" in assessing the RFC. (*Id.*)

6

relevant evidence, including medical signs and laboratory findings). While an ALJ "has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate," *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986), it is the "claimant's burden to establish how medically-documented impairments result in functional limitation," *Battle v. Berryhill*, No. 5:15-CV-537-D, 2017 WL 782562, at *4 (E.D.N.C. Jan. 24, 2017), *M. & R. adopted*, 2017 WL 780795 (E.D.N.C. Feb. 28, 2017); *see also* 20 C.F.R. § 404.1512.

Here, the ALJ assessed Plaintiff's RFC based upon the medical evidence and Plaintiff's statements about his symptoms. (R. 14–17.) As the ALJ explained, the state agency consultants at the initial and reconsideration levels did not express opinions about Plaintiff's RFC. While Plaintiff notes that "the State agency consultants . . . both . . . found there was insufficient evidence to make an RFC assessment" (Pl.'s Br at 5), Plaintiff omits their explanations – that the medical evidence was insufficient for a full medical evaluation because Plaintiff had been uncooperative (R. 80, 86). As there were no opinions from Plaintiff's treatment providers or other medical experts concerning Plaintiff's functional limitations, the ALJ had no medical opinions to evaluate. (R. 17 (citing R. 78–82 (initial), 85–89 (reconsideration).) The ALJ accurately summarized Dr. Wehnung's impression of the spinal MRI results. (*Compare* R. 16 *with* R. 541.) The ALJ's characterization of imaging results as "mild" (R. 17) is supported by Dr. Wehnung's interpretation of the

7

MRI results (R. 541). The court identifies no error in the ALJ's explanation of the RFC assessment. *See* 20 C.F.R. § 404.1545(a); SSR 96–8p, 1996 WL 374184, at *1.

*Arakas*, upon which Plaintiff relies, does not necessitate remand of this case. In *Arakas*, the Fourth Circuit faulted an ALJ for rejecting a physician's medical opinion about MRI results and favoring the ALJ's "own lay views of what an MRI could demonstrate." *Arakas*, 983 F.3d at 109. Here, ALJ Murchison relied on Dr. Wehnung's impression of the MRI results. Accordingly, the court finds Plaintiff's reliance on *Arakas* misplaced in this case.

Plaintiff makes no showing as to how the record before the ALJ was inadequate, other than by speculating that "a different RFC conclusion may have been reached" had the ALJ obtained a medical opinion. (Pl.'s Br. at 9.) At the hearing, the ALJ asked Plaintiff's counsel if there were any objections to the administrative record. Counsel did not object to the lack of medical opinion evidence, reporting only that she was waiting for records from a primary care provider, which were later made part of the record. (R. 32–65 (post-hearing primary care records), 69 (hearing statement from Plaintiff's representative).) The court discerns no failure of the ALJ to properly develop the record here. The ALJ cogently explained the RFC assessment, which is supported by substantial evidence. Accordingly, the court affirms the Commissioner's decision.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is AFFIRMED.

This 16th day of March 2026.

KIMBERLY A. SWANK
United States Magistrate Judge

9